IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOE C. TUCKER,  )
N88191,  )
  )
      **Plaintiff,**  )
  )
vs.  )
  )     **Case No. 25-cv-2176-DWD**
  )
DARREN GALLOWAY,  )
LATOYA HUGHES,  )
BRANDON ANTHONY,  )
  )
      **Defendants.**  )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Joe C. Tucker, Jr., a former inmate of the Illinois Department of Corrections (IDOC) currently detained at the Jefferson County Justice Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges the defendants violated his rights by allowing inmates to urinate and defecate in the dayroom showers. Plaintiff's Amended Complaint (Doc. 13) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual

allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE AMENDED COMPLAINT

Plaintiff alleges that in mid-2025, Shawnee stopped having inmates clean the showers for approximately 4-6 months.  (Doc. 13 at 6).  Plaintiff alleges that during this time, appropriate cleaning chemicals were not provided to cellhouse porters.  Around June 18, 2024, Plaintiff claims he wrote an emergency grievance that was never returned.  He wrote a second grievance on March 20, 2025, complaining that the showers contained biohazardous waste, and the cellhouse workers needed proper equipment to clean them.  Plaintiff claims that a counselor indicated the chief engineer would investigate the situation.  (*Id.*).

Plaintiff explains that there are 90-100 residents per wing, and each wing has two floors, with two showers on each floor.  (Doc. 12 at 7).  Showers may only be taken during dayroom, and Plaintiff alleges at least 40 inmates are released from their cells during dayroom before he is released.  He alleges that for 4-6 months urine, feces, and mold were pooling out of two showers and there was an infestation of small flies.  Plaintiff did not utilize these showers, opting instead for the other two on his wing.  He alleges the showers he used still had urine, mold, and occasionally contained feces. Plaintiff explains that he faced this problem in the 1 house and the 3 house, and that the stench was overwhelming.  He claims he sustained open wounds on his legs and feet, had respiratory problems, chest pain, and headaches, that he attributes to the showers.  (*Id.*).

Plaintiff alleges that in mid-2025 he spoke directly to Defendant Galloway about the lack of cleaning in the showers, and Galloway merely told him to shower before others. (Doc. 12 at 7). On October 23, 2025, Plaintiff spoke directly to Defendant Anthony who said that inmates can leave dayroom to use the restroom in their cell, but then they cannot return to dayroom. (*Id.* at 7-8). Plaintiff alleges that he wrote Defendant Hughes, the IDOC Acting Director, on October 3, 2024, about the conditions at Shawnee, but he never got a response. (*Id.* at 8). Plaintiff alleges Galloway and Anthony had firsthand knowledge that the showers were dirty for 4-6 months, but they turned a blind eye to the risk. He alleges the same against Hughes. (*Id.*).

Plaintiff seeks monetary compensation and injunctive relief in the form of an order mandating certain cleaning materials and procedures. (Doc. 13 at 9). In support of the complaint, Plaintiff submitted a one paragraph affidavit wherein he alleged the showers were filthy for 4-6 months and it caused him skin irritation, respiratory irritation, and ongoing distress. (*Id.*).

Based on the allegations in the Complaint the Court designates the following Claim:

**Claim 1:** **Eighth Amendment conditions of confinement claim against Defendants Galloway, Anthony, and Hughes for the urine, feces, and mold allegedly in the showers at Shawnee in 2025;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.** Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without

prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs.  *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994).  Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.*  Many conditions standing alone may not be sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively.  *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

As the Court noted upon review of the initial complaint, the lack of cleanliness in a shower or the presence of standing water does not always amount to a violative condition of confinement.  In *Snipes v. DeTella,* the Seventh Circuit held that "an inch or two of water in the shower, even where one has a sore toe, is not an excessive risk to inmate health or safety, not the denial of the minimal civilized measure of life's necessities." 95 F. 3d 586, 592 (7th Cir. 1996) (internal citations and quotations omitted). In *Stanely v. Page,* the Seventh Circuit found that even if standing water had caused the plaintiff's athlete's foot, "his infection did not cause him serious harm, and the slow drain

in the shower did not pose an excessive risk to his health or safety." 44 F. App'x 13, 15 (7th Cir. 2002) (internal citations and quotations omitted).  However, in the present case, the Court is concerned that Plaintiff faced not only mold and pooling water, but also the presence of urine and feces, and the issue persisted for 4-6 months.  At initial review, this tips the scales in Plaintiff's favor and is sufficient for his claim to proceed.  Plaintiff alleges that he submitted grievances on the issue and spoke to Galloway and Anthony personally, but he alleges they did not make any effort to remedy the condition.  Claim 1 may proceed as pled against Defendants Galloway and Anthony.

By contrast, Plaintiff alleges that his sole contact with Hughes was via a written letter that he submitted in October of 2024.  The primary allegations in his complaint about shower cleanliness describe issues occurred for 4-6 months in mid-2025.  Given the disconnect in timeframes, it is not clear if the letter adequately notified Hughes of the primary allegations in this complaint.  Even if it did, a letter writing campaign to high-ranking officials is not a pathway to personal liability under § 1983.  *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (high-level prison officials may relegate tasks to other prison administrators, and a letter writing campaign does not automatically give rise to personal liability).  Plaintiff's sole letter to Hughes, which he alleges complained generically about the conditions at Shawnee, is not enough to proceed against her in her individual capacity for the shower cleanliness issues described in the complaint.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** survives against Defendants Galloway and Anthony and the Clerk shall serve Galloway and Anthony consistent with this Order.

By contrast, **Claim 1** is insufficient to proceed against Defendant Hughes and the Clerk of Court shall **TERMINATE** Defendant Hughes.

The Clerk of Court is **DIRECTED** to prepare for Defendants Galloway and Anthony: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 13), and this Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: May 12, 2026

Judge Dugan
Digitally signed by Judge Dugan
Date: 2026.05.12 07:35:19 -05'00'

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.